Filed 9/22/21  In re Michael M. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re MICHAEL M., a Person Coming Under the Juvenile Court Law. | B309987 (Los Angeles County Super. Ct. No. 18CCJP00192) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>G.C.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge Pro Tempore. Affirmed.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Amir Pichvai for Respondent.

_____

G.C. (mother) appeals from the order terminating her parental rights to two of her children, M.M. and P.M., under Welfare and Institutions Code section 366.26.[1]  Mother's sole contention on appeal is that the Los Angeles County Department of Children and Family Services (the Department) and the juvenile court failed to comply with the inquiry and notice provisions of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA).  We affirm the order terminating parental rights.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and Daniel M. (father) are M.M. and P.M.'s biological parents.  Both parents have additional children with different partners, but because mother's appeal is based on her claim to Indian ancestry, we only discuss mother's children.  Because the sole issue raised in mother's appeal is ICWA compliance, we focus primarily on the facts and procedural background relevant to that issue.

_____

[1] Further statutory references are to the Welfare and Institutions Code unless stated otherwise.

2

*Prior Dependency Proceedings*

In June 2016, the dependency court terminated mother's parental rights as to her four oldest children. The dependency proceedings for mother's three oldest children began in 2011. Mother filed a Judicial Council form titled "Parental Notification of Indian Status (ICWA-020)" on June 11, 2011, indicating that she had Indian ancestry, and possibly "Cherokee." Mother told the social worker her father had told her of Cherokee Indian ancestry on his side of the family, but all of her grandparents had passed away. There is nothing in the record providing any additional information, but in August 2011, the court found that ICWA did not apply based on mother's claim of Cherokee ancestry. In 2013, dependency proceedings began for mother's fourth child. The Department's reports stated mother denied any Indian ancestry, but the record does not include an ICWA-020 form for mother's fourth child.

Soon after M.M.'s birth in July 2016, the Department sought dependency jurisdiction. Mother and father filed ICWA-020 forms denying any Indian ancestry, and the court found M.M. was not an Indian child. By October 2016, the court had released M.M. to mother's custody and dismissed the petition, over the Department's objections.

*Current Dependency Case*

The Department again filed a dependency petition as to M.M. in January 2018, based on the parents' domestic violence and substance abuse, and mother's prior dependency with respect to his older half-siblings. At the detention hearing, mother claimed she had Indian ancestry, but explained she had no proof

and no information to support the claim. In response to the juvenile court's questions about the name of the tribe, mother responded she could not pronounce or spell it, but it started with "AW." The court stated, "I want the Department to try to follow up with the mother to see if there's some federally recognized tribe"; however, the court also found on the current record no reason to believe that M.M. was an Indian child. The minute order from the detention hearing states that mother and father each submitted an ICWA-020 form, but the completed forms do not appear in the appellate record. There is nothing in the Department's subsequent reports to indicate the Department asked mother or anyone else for additional information about mother's claim of Indian ancestry. In April 2018, the court sustained the petition allegations and ordered reunification services.

In May 2018, the Department filed a dependency petition as to newborn P.M., based on the parents' domestic violence and substance abuse, and mother's prior dependencies. Mother filed an ICWA-020 form stating she believed she had Indian ancestry, but she did not provide the name of any tribe. On June 22, 2018, the court found ICWA did not apply.[2]

The court terminated mother's reunification services in September 2020. At a section 366.26 hearing on January 19, 2021, the court terminated parental rights as to M.M. and P.M. Mother filed a notice of appeal the next day.

---

[2] Father's ICWA-020 form was not filed until July 20, 2018. He denied any Indian ancestry, and the court found P.M. was not an Indian child.

**DISCUSSION**

*Standard of Review*

On undisputed facts, we make an independent determination about whether ICWA's requirements have been satisfied.  (*In re D.F.* (2020) 55 Cal.App.5th 558, 565 (*D.F.*).)  We review the juvenile court's ICWA findings for substantial evidence, and the appellant bears the burden of showing insufficient evidence to support the ICWA finding.  (*Ibid.*)

*ICWA Inquiry and Notice Requirements*

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' [Citation.]"  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).)  "In California, . . . persistent noncompliance with ICWA led the Legislature in 2006 to 'incorporate[ ] ICWA's requirements into California statutory law.'  [Citations.]"  (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91; see also *In re Breanna S.* (2017) 8 Cal.App.5th 636, 650 [California law "incorporates and enhances ICWA's requirements"].)  Both ICWA and California law define an "Indian child" as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.  (25 U.S.C.

§ 1903(4); § 224.1, subds. (a) & (b); see also *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 783 (*Elizabeth M.*).)

The court and the Department have an affirmative and continuing duty under ICWA and related California law to inquire whether a child who is the subject of a dependency proceeding is or may be an Indian child. (*Isaiah W.*, *supra*, 1 Cal.5th at pp. 7–8.) The scope of the duty of inquiry is defined in regulations promulgated under ICWA (see 25 C.F.R. § 23.107 et seq. (2020)), California statutes, and rules of court. (*In re T.G.* (2020) 58 Cal.App.5th 275, 290–291.) Here, we apply the federal and state statutes in effect in January 2021, when the section 366.26 hearing took place. (*In re A.M.* (2020) 47 Cal.App.5th 303, 321.)

The Department's initial duty of inquiry at the beginning of a child welfare proceeding includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) The court must inquire at each party's first appearance, whether any participant in the proceeding "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) Part of the initial inquiry includes requiring each party to complete the ICWA-020 form. (Cal. Rules of Court, rule 5.481(a)(2)(C).)

When there is "reason to believe that an Indian child is involved in a proceeding," further inquiry is required. (§224.2, subd. (e); *In re T.G.*, *supra*, 58 Cal.App.5th at p. 290, fn. 14.) Effective September 18, 2020, section 224.2, subdivision (e)(1), explains that "reason to believe" exists "whenever the court, social worker, or probation officer has information suggesting

6

that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."[3]

*Application*

Mother contends the Department failed to comply with its duties of initial inquiry and further inquiry, and that the juvenile court failed to ensure compliance with ICWA after mother

---

[3] Further inquiry includes interviewing parents and extended family members to obtain information such as the names of the child's "biological parents, grandparents, and great-grandparents, . . . as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known." (§ 224.2, subd. (e)(2)(A); 224.3, subd. (a)(5)(C); Cal. Rules of Court, rule 5.481(a)(4)(A); see also *Elizabeth M., supra*, 19 Cal.App.5th at p. 786 [if a parent has raised the possibility of Indian ancestry, the agency has "affirmative obligation to interview family members and others who could be expected to have relevant information concerning the child's status"].) Further inquiry also includes contacting the Bureau of Indian Affairs, the State Department of Social Services, and any tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe. (§ 224.2, subds. (e)(2)(B) & (e)(2)(C); Cal. Rules of Court, rule 5.481(a)(4)(B) & (a)(4)(C).) If the further inquiry under section 224.2, subdivision (e), results in information that would give the court or the Department "reason to know" that the child is an Indian child under ICWA, then the relevant tribes must be given notice of the proceedings. (25 U.S.C. § 1912, subd. (a); §224.3, subd. (a); §224.2, subd. (d) [describing circumstances where there is "reason to know" a child is an Indian child].)

asserted she had Indian heritage.  More specifically, mother argues that the Department should have broadly interviewed members of the maternal-side family, including a maternal great-cousin who was a prospective adoptive parent, to find contact information for maternal relatives and to ask about possible Indian ancestry.

The Department argues that mother's narrow focus on the bare assertion of tribal affiliation, inconsistently made on some ICWA-020 forms and as explained to the court (i.e., a tribe beginning with the letters "AW"), misrepresents the broader record.  The Department contends there was no reason to believe the minors are Indian children, because in prior proceedings, mother had made inconsistent and contradictory statements, and juvenile courts had previously found ICWA inapplicable to five of mother's children, including M.M. in 2016.  Further, the Department argues that when mother claimed Indian ancestry in 2018, she did not identify a tribe and disclaimed having any additional information about the source of the Indian ancestry.

We agree with the Department.  Mother cites to cases where appellate courts have determined that vague, incomplete, or conflicting information provided to the Department was nevertheless deemed sufficient to give it and the court "reason to believe" a particular child might be an Indian child, triggering a duty of further inquiry.  But the cited authorities – including *In re T.G.* (2020) 58 Cal.App.5th 275, *In re D.S.* (2020) 46 Cal.App.5th 1041, *D.F., supra,* 55 Cal.App.5th 558, and *In re. M.W.* (2020) 49 Cal.App.5th 1044 – do not support the broad proposition that mother proposes: mother contends the mere assertion of possible Indian ancestry always requires the Department to conduct further inquiry pursuant to section 224.2,

8

subdivision (e). Whether the information provided or available in any given case gives the Department and the court "reason to believe" an Indian child may be involved in the proceeding is specific to the facts of that case. None of the authorities relied upon by mother dictate the result in the instant appeal, and we read each of those cases to involve more compelling records upon which a court might find reason to believe, including more detailed information, such as more specific tribal names or locations, or more specific information about family members with knowledge of the claimed Indian ancestry.

Here, mother not only provided a vague statement regarding possible ancestry for M.M. and P.M., but affirmatively told the court that she did not have any other information. Her statements came at a single hearing comprising only one part of a decade long history of dependency proceedings, during which there was ample opportunity to suggest leads to the Department. That history includes conflicting statements by mother, and court findings that ICWA was inapplicable to siblings of the minors here. In past proceedings, the only claim of ancestry made by mother was on the paternal side of her family. Now, on appeal, she asserts for the first time that the Department had a duty to identify and interview all of her maternal-side relatives. Given this record, we find that mother's arguments amount to an attempt to obligate the court and the Department to cast about for investigative leads, which ICWA does not require. (See *In re A.M., supra,* 47 Cal.App.5th at p. 323.)

We accept, for argument's sake, the general proposition that "[w]hen a parent or other family member has informed a dependency investigator or the juvenile court of the child's possible Indian ancestry, the use of a tribal name that does not

9

correspond to that of a federally recognized tribe—or saying 'Indian' but providing no tribal name at all—does not, without more, relieve the child protective agency of its affirmative obligation to interview family members and others who could be expected to have relevant information concerning the child's status or the court of its duty to ensure an appropriate inquiry has been conducted before concluding ICWA does not apply to the case." (*Elizabeth M., supra,* 19 Cal.App.5th at p. 786.) Mother contends the Department should have further investigated mother's affiliation with the tribe she claimed started with "AW." However, on appeal both parties agree that the relevant listing of recognized tribal entities published in the Federal Register does not contain any tribe starting with the letters "AW," so there is no basis for mother's contention of error.

In *In re J.S.* (2021) 62 Cal.App.5th 678, 683–684 (*J.S.*), father submitted an ICWA-020 form claiming Indian ancestry and explaining that paternal grandmother was 58% Native American. The juvenile court ordered the Department to follow up. Paternal grandmother explained that the information came from a DNA test, the results had surprised her, and she was certain no family members were enrolled in a tribe. On appeal, Division Seven concluded that the Department's interview of paternal grandmother was "an adequate and proper investigation under section 224.2, subdivision (e)." (*Id.* at pp. 869–690.)

In contrast to the information provided by the father in *J.S., supra,* 62 Cal.App.5th at page 683, identifying paternal grandmother as the basis for his belief that he had Indian ancestry, the record here reflects that mother informed the court she had no information about the source of her belief that she had Indian ancestry. Because she did not identify a federally

10

recognized tribe or any family members "who could be expected to have relevant information," there is no reason to believe requiring further inquiry by the Department.  (*Elizabeth M., supra*, 19 Cal.App.5th at pp. 786–787.)

## DISPOSITION

The juvenile court's order terminating parental rights under section 366.26 is affirmed.


MOOR, J.


We concur:


BAKER, Acting P.J.


KIM, J.

11